United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa, Judge Lagoa is in Miami, and Judge Brasher is in Birmingham and we have four appeals that are scheduled for oral argument this morning. I would advise counsel that we have read the briefs and we've examined the relevant parts of the record if that will assist you in narrowing the focus of your arguments for the time that you have available this morning. Miss Tisa is the courtroom deputy and she will serve as the timekeeper and she will let you know when your time to argue has expired and she will also give you a two-minute warning before your time to argue expires. So we're ready to begin with the first case. It is the United States of America versus Robert Beneby. Daniel Matzkin is here for the United States and Kristen Nelson is here for Beneby and Mr. Matzkin you may begin with your argument. Thank you very much. Good morning, your honors. May it please the court. Dan Matzkin on behalf of the United States. Nowhere in section 401 of the First Step Act did Congress authorize district courts to rewrite history. Unfortunately the district court here did just that by erroneously applying the First Step Act to Mr. Beneby despite the historical fact that his initial sentence had been imposed years before the statute's enactment date. This court therefore should vacate the district court's judgment and remand this case for resentencing. Mr. Matzkin, this is Judge Lagoa. Can you hear me? Yes, good morning, your honor. Good morning. Let me ask you a question. In the United States versus Tinson, we said that a vacator wholly nullifies a sentence and in Pepper versus United States, the Supreme Court says that a vacator quote wipes the slate clean. So wouldn't a ruling in your favor necessarily continue to give some legal effect to the vacated sentence? No, your honor. So and thank you for raising this point because Mr. Beneby essentially hinges his case on the all or nothing argument that vacature of a sentence erases that sentence for all purposes. Not only according to Mr. Beneby does it wipe the slate clean for purposes of resentencing, it also effectively erases that sentence from history. Well isn't that actually what happens when you have a sentence vacated? Don't you have a de novo resentencing? Yes, I mean, exactly. So as a legal matter, we don't dispute the fact that vacature of a sentence renders that sentence null and void legally speaking. But I would say a few things. First of all, the general rule that courts write on a clean slate of resentencing doesn't displace and can't displace the clear and specific language in section 401c about when section 401 does and doesn't apply. What's more, vacature of a sentence doesn't always erase an initial sentence for all purposes. In the memorable words of then Judge Barrett in her dissent in Uriarte, vacature is not a time machine. And a perfect example of that can be now that act requires that when a court of appeals remands a sentence, the district court has to look to that previous sentence to see what guidelines were applied and reapply those same guidelines on resentencing. So like Congress did here with section 401c in the First Step Act, the Sentencing Reform Act allows district courts to go back and look at the imposition of an initial sentence as a historical reference point. So we're not arguing that the vacated initial sentence still carries legal force. All we're saying is that section and all Congress said in section 401c is that the initial sentence should be looked at as a historical reference point. And I should also note that in Dorsey the Supreme Court said that the Sentencing Reform Act is also a background principle on which Congress legislates. So Congress certainly would have had this principle in mind in enacting and drafting the First Step Act. I should note that the Sentencing Reform Act doesn't apply in this case because it only applies at least as far as this provision is concerned where the court of appeals remands a sentence. But it is a helpful example of another scenario where Congress explicitly contemplates that district courts ought to and in fact need to look back to an initially imposed sentence even where that sentence has been vacated. Let me ask you a question, Mr. Maskin. This is Andrew Brasher. Is there any meaningful difference for your position between these following two cases? So case one would be before the First Step Act's effective date the defendant's sentence is vacated. So he's awaiting resentencing on the effective date of the act. And case two would be this case where the defendant is serving a sentence on the effective date and then later after the effective date has it vacated and he is to be resentenced. Is there any difference between those two in your view? So under our reading of the statute, thank you for raising that point, so under our reading of the statute there is no difference. From our perspective all that matters is this applicability of section 401 turns on whether a sentence was handed down before the enactment date period full stop. That being said the Sixth and Seventh Circuit, so to take a step back, Mr. Benneby cited the Sixth Circuit's decision in Henry and the Seventh Circuit's decision in Berriarte as supplemental authority ostensibly in support of his reading of the statute. Now there's no question that those cases rejected the government's reading of the statute but those cases don't support his reading of the statute. In fact if your honors for whatever reason found the Sixth and Seventh Circuit's statute persuasive, which we don't advocate that your honors do, the government still wins under that approach because in this case Mr. Benneby unlike Mr. Henry and Mr. Berriarte was not awaiting resentencing on the enactment date of the act. It just strikes me and this is why I asked the question I mean and I'm going to ask the other side too, I mean it strikes me that the defendants in the Sixth and Seventh Circuit cases had a much stronger claim to being in the same position as someone who had not been sentenced before the First Step Act became effective. They had no sentence at the time right so they were just sitting there in jail waiting to be sentenced whereas the defendant here is just like anybody else who had already been sentenced by the time the effective date of the First Step Act came into place right? Well that's exactly right and again you know without conceding that your honors should go down that road and adopt the Sixth and Seventh Circuit's reasoning if your honors were to do that the government would win under that reading of the statute and your honors should nevertheless reverse the district court's case. Let me ask you another question so I'll just tell you I find your textual reading of the statute to be persuasive but I'm having trouble with this question. How would Congress have written this if it wanted to have written a statute that is what the defendant says this statute means? Does that make sense? What would they have added to the statute? How would they have written it differently? Sure so right now just to take a step back the statute section four of the reduced penalties apply if a sentence for the offense has not been imposed as of such date of enactment. So for one I think there are a few ways Congress could have gone about it. I think it could have said if a valid sentence for the offense instead of just a sentence you know and argue Congress as we pointed out in a brief Congress made a conscious decision and using the indefinite article a to mean any sentence. So Congress certainly had the option of narrowing that down to either to valid sentences to final sentences to ultimate sentences in some way that would signify that it contemplated the that the statute would apply to the most recent sentence as opposed to any sentence in this case the initial sentence. And then you know the other option would be instead of saying has not been imposed as of the enactment date I suppose Congress could have said is imposed on or after the effective date or just after the effective date something along those lines. Has been imposed as of does a lot of work in this statute. The present perfect tense that has been imposed is backward looking whereas simply saying is imposed on or after or is imposed after or something along those lines would be future looking which is exactly what Mr. Benneby says the statute is or ought to be. Well here Congress did use different words in the same statutory provision didn't it? So if it had intended for a and any to be synonymous it would not have done that right? No your honor I mean they are synonymous so there's no I mean there's no reason it would have to use the same word twice but I would also point out to the extent we're going down that road that Congress also used the on or after formulation that I was just mentioning in section 402b of the statute and in section 401a2 of the statute Congress used finality as a measuring stick which it also could have done here had it wanted section 401c to read that way as Mr. Benneby thinks it does. So you know thank you your honor so you know at the end of the day of the three available readings before your honors the government's reading Mr. Benneby's reading and the six and seven circuits reading the government's reading is the only one that doesn't require your honors to rewrite or add extra words to the statute. So how do we get around the Supreme Court's decision in Rosello? I'm quoting where Congress includes particular language in one section of the statute but omits it in another section of the same act. It is generally presumed that Congress acts intentionally and purposely with disparate inclusion or exclusion. Sure so as I was just saying you know along those lines Congress did include elsewhere in the statute the concept of finality. It also included elsewhere in the statute the you know the on or after formulation that it could have included just as easily in section 401c but decided not to. So all taken with all the government's reading of the statute is the only one before your honors that doesn't require adding additional words to the statute to make the statute match up with the reading. All right thank you Mr. Maskin. We'll now hear from Ms. Nelson on behalf of Benneby. Good morning your honors. Kirsten Nelson on behalf of Mr. Robert Benneby and may it please the court. With the court's indulgence I'd like to just take a step back and reorient us a little bit. This is a resentencing after a 2255 where the underlying sentence was vacated in its entirety which Judge Lagoa just brought up. Because of that the court doesn't necessarily have to reach the 401c analysis which I will address. This case squarely falls under Dorsey and this circuit's precedent in Hines and under the prior panel ruling is controlling. The law is clear in the 11th circuit. A defendant should be sentenced under the law in effect at the time of sentencing. The law in effect at the time of Mr. Benneby's resentencing was the first step act and under the analysis in Dorsey and in Hines Congress intended the reduced penalties of section 401 to apply to pre-enactment offenders sentenced after enactment whether that was at an initial sentencing or a plenary resentencing which is what we have here. So is your position, can I ask just a quick question to understand that position a little bit better? I mean if Congress had in the first step act in this provision had said this is not retroactive, just said that straight up, would it be your position that even though Congress said that in the first step act that it would nonetheless apply to Benneby's case because his previous was vacated? Thank you for that question Judge Brasher. It would be our position that it would still apply because this is not a retroactive application of section 401. As the court knows once a sentence is vacated the slate is wiped completely clean and there is no legal sentence at that point. So it wouldn't be a retroactive application. It would be applying the law as it the district court properly applied section 401 under the Dorsey and Hines analysis. But secondly, your honors, even if the court applies section 401C, the plain meaning and again Hines control and show that the district court properly applied the reduced penalties to Mr. Benneby. And when I say Hines controls in terms of the 401C analysis, what I mean specifically is that if section 401C applies to pre-act offenders at their initial sentencing, which is post enactment, then under Hines 401C equally applies at a resentencing to somebody like Mr. Benneby. This is because this court held there is no meaningful difference between an initial and a resentencing post act. And that Mr. Benneby is in a materially indistinguishable position from a defendant at an initial sentencing post enactment. You agree though that that would be a different situation if you were only talking about vacating a particular account for a couple of counts as opposed to vacating the entire sentence. Yes, your honor. I believe that that would be a different circumstance and that's what we see more readily in the third and it was a limited remand. So the vacator was only on what I'll call the Virgin Islands convictions. So in that circumstance, I do think it's factually distinguishable, but in Mr. Benneby's case, as the court is aware, the district court vacated his entire sentence. And so, and isn't that the, that's the distinction is that if you, that's our question and the is never happened. That's correct, your honor. And I think that's well established as judge Lagoa, you just pointed out under Supreme court precedent as well as the circuit. And just to draw on historically, as an historical matter of fact, a sentence was imposed, but the sentence was wiped clean. So it never happened. That's correct, your honor. We do not dispute that historically speaking, there was a sentence imposed, but as your, as your honor is pointing out that historical fact does not necessarily have legal significance. And that's the distinction that we are making. And this is consistent with the distinctions that we know at, at in practice. So for example, under double jeopardy, if we take that as an example, if a defendant is convicted by a jury sentenced, and then the conviction and sentence are vacated, he comes back down, he's retried and convicted upon sentencing. There is no double jeopardy issue. Even if the court were to impose a higher sentence after vacator, there still would not be a double jeopardy concern because the only legally relevant sentence is that second sentence, the final one after vacator. So for those reasons, your honor, we agree that if Mr. Bennaby had multiple counts and only one had been vacated, that would be factually distinguishable. That would be closer to the third circuit precedent. But here we have complete vacator and de novo sentencing. And under Pepper, Dorsey and Hines, we believe that the district court properly applied section 401 at Mr. Bennaby's resentencing. So your honors, I'd like to turn to the Dorsey-Hines analysis briefly. The general rule is that defendants are sentenced under the law in effect. We know that from United States versus Grimes, as well as Pepper. The only exception is the federal savings statute, which permits Congress to apply a new act more lenient penalties to pre-act offenders without expressly saying so in the new act. But all that Congress has to do is show a plain import or fair implication that they intended those reduced penalties to apply to pre-act offenders sentencing post-act. And we have that clear implication in the First Step Act, which is what I would call the Dorsey fix to the First Step Act, where Congress said in the Fair Sentencing Act, we didn't include any language about what to do with pending cases. And we learned our lesson in the First Step Act, we are going to include that language. Well, let's talk about, I do want to ask you a question about that because so the government's brief does, I guess what I would say, a textual analysis of this statute. And one of the things that the government points to in support of its position is the fact that this provision of the statute says applicability to pending cases. And so it's hard for me to see. I mean, let's just assume that's dispositive. It's probably not dispositive. Let's just assume it is. I mean, I think it's undisputed that Mr. Benneby didn't have a pending case at the time the act became effective. So I have two responses to that, Judge Brasher. So the first one is, if we are traveling under Dorsey Hines, Mr. Benneby does not need to rely on 401C. We would simply apply the background principle that the law at the time of sentencing applies, and then make sure that the federal savings statute does not apply, which it does not in this circumstance, because Congress clearly indicated that it intended pre-act offenders sentenced after enactment to get the benefit of the reduced penalties. And secondly, Your Honor, as to 401C and the pending cases requirement, the Fourth Circuit in Bethe, which we filed as part of our supplemental authorities last week, dealt with this very issue. And what the Fourth Circuit reasoned was that under 401C, that if you have somebody who is a pre-act offender sentenced post enactment, that their case is still technically pending because there was no legal sentence imposed at the time of enactment because that sentence had been vacated. And so we think that that analysis is relevant to Mr. Benneby's case, which is factually similar in that his case, his sentence was vacated post enactment. But again, I think that Mr. Benneby both gets the benefit of 401 under the Dorsey Hines analysis, which doesn't rely on section 401C, as well as if we turn to 401C and apply Hines in that context, Your Honor. Let me ask you what, and this is, this is probably not a dispositive issue, but what is your sort of theory for why Congress wrote this retroactivity provision the way it did? How does, how does your reading of this sort of make sense as an understanding of what Congress was trying to do with this provision? And Judge Brasher, just to be sure that I'm answering your specific question, are you referring to 401C? Yeah. Okay. Yeah. So, I mean, you know, they could have, for example, they could have just said, shall apply to any offense that was committed before the date of this enactment, and then it would be retroactive to everybody. Instead, they added this clause that says, if a sentence for the offense has not been imposed as of such date of enactment, what do you think they were trying to do? So I don't want to, you know, try to guess what from the senators, which we filed under supplemental authority. But to answer your specific question, I believe that, that Congress wanted to fix the issue with, that they had with the Fair Sentencing Act, which is what the Supreme Court did with Dorsey. That is to say that the Fair Sentencing Act was completely silent as to application, either retroactively or to pending cases. And the Supreme Court said the Fair Sentencing Act, which is completely silent, does apply to pre-enactment offenders who are sentenced post-enactment. And I think Congress was trying to fix that issue in the Fair Sentencing Act. And as this court- But I mean, but I guess if that, they didn't fix it. If we read it the way you're suggesting, they should have just put nothing in there at all, right? Because it would just be, a silence would have been the same thing that would have resulted in the same thing that you're suggesting we read the text to say, right? Am I misunderstanding that? Your Honor, I somewhat differ in your understanding. So let me try to be a little bit more clear. I think in Mr. Beneby's situation, he would get the benefit under the Dorsey-Hines analysis. But also if we look more closely at Section 401C in a textualist analysis, and in conjunction with Hines, he would still get the benefit. So I think in Mr. Beneby's specific factual situation, he would benefit under either scenario that you postured, Judge Brasher. But I do believe here that Hines truly controls in either analysis. And the reason for that is because, again, this court held that there's no meaningful difference between a pre-enactment offender who is sentenced post-enactment, whether that is an initial sentencing or a resentencing. And I quote directly, those positions are materially indistinguishable. And for that reason, I believe that Mr. Beneby would benefit under the Dorsey analysis as well as under a textualist analysis of Section 401C. If I may, Your Honor, I want to turn briefly back to the Dorsey analysis. And just to say that Congress did clearly intend for this, for the reduced penalties to apply to pre-enactment offenders who are sentenced post-enactment. For example, in Section 401C and some of the other language that we see not limiting the application. And I'd also like to touch on something that Judge Wilson, you brought up with Mr. Matzkin, and that is that Congress did different words in this statute. At one point, it used a, and another point it used any. And we cannot just simply disregard Congress's choice to explicitly use different words, especially when it's in the same provision. So Judge Brasher, I think this was one of your concerns. Doesn't a, can't a mean any? And it can in some circumstances, but it doesn't mean that here. And that's where becomes so important. So for example, I could say last night, I saw a great movie. That doesn't mean that last night I saw any great movie. It means that last night I saw a specific movie that I thought was great. And so I think in this particular circumstance, context is very important. And because Congress chose to use sentence imposed, which borrows from the common law understanding of sentencing and sentencing is particularly in the context of vacator, we cannot just simply ignore all of the body of law and understanding that goes with that term. And to adopt the government's interpretation would be essentially to ignore that common law understanding. And under the presumption against change in common law, which is well established, both in Supreme court precedent, as well as in this court, we simply do not discard the common law definitions unless Congress explicitly tells us to do so. And that is under Garcia Celestino, which is from the circuit, as well as Whitman via American trucking corporation in which justice Scalia essentially said to disregard these common law understandings without an, thank you, Ms. Tisa, without an explicit directive from Congress would be the equivalent of hiding, would be the equivalent of hiding elephants in mouse holes. We just simply do not do that without Congress telling us to do so. And here, the statute did not tell us to do so. If Congress had wanted to, it could have, because we know that Congress can include definitions of terms, which it in fact did in the, um, in title one as well. I think that's an interesting point. Um, so what, how would you, so I asked the government how it would rewrite the statute to say what you say? It says, how would you rewrite the statute to say what the government says? If the government wanted this statute to say it didn't apply to someone like Venaby, how would Congress have written it? I thought of a couple of ways, Judge Brasher, that Congress could have written it. So one would be this section shall apply to any offense that was committed before the deck, the act, the date of enactment. If this act, um, if a first original initial sentence for the offense had not been imposed as of the date of such enactment, another possibility would be this section shall apply to any offense that was committed before the date of enactment of this act. If no sentence valid or invalid for the offense had been imposed as of such date of enactment, a third possibility, a little bit more wordy. So please bear with me is for offenses committed before the date of enactment of this act, this section and the shall not apply if a sentence for the offense has already been imposed as of the date of such enactment. Otherwise, this section and the amendments made by this section shall apply. I have one more question I want you to answer, um, if that's okay. Um, could you address the past tense nature of the statute? So, you know, I think one of the, one of the government's good points here, not necessarily a dispositive point, but a good point is that it, the statute says it speaks in the past tense. So we would look backwards to see if a sentence has been imposed as opposed to, for example, whether there was an existing sentence. What do you say about that? So again, I think that goes back to the context here. Congress was clearly trying to fix the Dorsey issue, which was a complete silence on what to do with pending cases. And they made that Dorsey fix against the legal backdrop of sentencing in vacator, the well established law, which we must assume under Supreme Court precedent and this circus precedent that Congress knew when they were drafting legislation. So they wanted to make it clear that offenders who had been, um, who had committed their, their offense before enactment sentence post enactment would still get the benefit. And I think that that is an explanation for the choice of the tense. But what I will say is that, again, we cannot lose sight of the background principles against which Congress legislates. And these are deeply rooted in our jurisprudence and our common law. And again, I see I'm out of time. I want to be respectful of that unless the panel has further questions. We rest on our arguments presented today, as well as in our filings and respectfully request that this court affirmed the district court's decision. All right. Thank you, Miss Nelson and Mr Matzkin. You have reserved some time for rebuttal. Thank you, Your Honor. Um, from the outset, to be clear, um, our position isn't that there's no other way Congress could have written the statute to say what it says now. As the dissenting opinion in the Fourth Circuit's Bethea case memorably put it, unambiguity does not require perfection. Just because Congress perhaps could have said it better or could have said it differently doesn't mean that the statute in any way doesn't say what government does. It says I'm turning to the councilman. The question is sure, but you you can see, though, that there are existing cases, not just from this court, but also from the United States Supreme Court that discuss the fact that there are these guiding principles that sentences sometimes sentences are imposed that are unconstitutional. So the sentence has to be vacated in its entirety, and that as a legal matter of principle, that sentence no longer exists. Do you not concede that point? Yes, we do concede that the vacated sentence, legally speaking, no longer exists. But then again, we run and take a quick step back. Background principles are helpful as far as they go, but they have to give way when they run against the statute. And the Sentencing Reform Act is a perfect example of that, because how could that statute exist? A statute that instructs district courts to look back at a previous sentence? How could that statute exist? If Mr. Benneby's argument were right, that once the sentence is vacated, not only is it wiped clean, figuratively speaking, from the books as far as he's concerned, but literally wiped clean from the history books. It doesn't make any sense. It's an end-all be-all argument. It doesn't work. How do you address the... I know that you want us to read the use of the Article A to mean any, but how do we really read it to mean any when Congress specifically used the word any offense in the statute in question? Well, again, our position isn't that Congress couldn't have been a little bit more precise. Would it have been preferable had it used the same word? Sure. But there's no textual indication that those two words mean anything differently. I agree with my friend on the other side. Context is key. Let's take an example. Imagine if Your Honor asked me, or I'll take a step back. Imagine if I stated a legal proposition at oral argument that Your Honor wasn't familiar with, and Your Honor asked me, counsel, can you identify a case for that proposition? If Your Honor asked me that, I could just as easily respond and validly respond with the case of the Supreme Court from the Eleventh Circuit or from some other circuit, because when Your Honor would ask me that question, the word a really means any. What Your Honor is asking is, you know, can you identify any case standing for that proposition? And it's in that vein that Congress used the word a sentence here. Great. Thank you. What's your, so Mr. Eshel, what's your, so I asked the other side in the case sort of what the explanation was from her perspective as to why Congress would have adopted this particular retroactivity provision. What's your take on that? Well, my take is that drawing, you know, as the Third Circuit concluded in Hodge, Congress concluded that drawing the line at initial sentence imposition makes more sense than drawing the line at ultimate sentence imposition. Language of the First Step Act shows that Congress saw it the same way. You know, imagine a scenario where you have two defendants, two co-defendants, who are similarly situated in all respects, who file appeals at the same time, both of whom are sentenced, you know, pre-enactment. One of them raises a single issue, gets his sentence reversed, you know, the appeal moves very quickly, and the reversal happens also pre-enactment. Another defendant raises, you know, 10, 12 issues. The case gets set for oral argument and drags out. The opinion finally issues reversing his sentence, only the sentences reverse, you know, 9 and 12 months post-enactment. Why would that second defendant, I mean, how would it be equitable for that second defendant to benefit from the act when the first defendant wouldn't? I think that's the sort of scenario that Congress had in mind when it decided to draft the statute the way it did. I'm not sure how I'm doing on time, but to the extent that your honors have any other questions, I'm happy to answer them. Oh, it looks like with 10 seconds left, it looks like your time is up, Mr. Matsken. Okay. Thank you very much, your honors. We ask that the court vacate the district court's judgment and remand for resentencing. All right. Thank you. Thank you. Thank you, Ms. Nelson. Thank you.